UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

DONNA ANN GABRIELE CHECHELE,

                        Plaintiff,

    -against-

THOMAS G. DUNDON,

                      Defendant.

------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___AUG 1 7 2020

MEMORANDUM DECISION
AND ORDER

19 Civ. 10544 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Donna Ann Gabriele Chechele brings this action pursuant to Section 16(b) of the

Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78p(b), on behalf

of Nominal Defendant Santander Consumer USA Holdings, Inc. ("SCUSA"). Plaintiff, a

shareholder of SCUSA, alleges that Defendant Thomas G. Dundon, a former executive and

beneficial owner of more than 10% of SCUSA's common stock, violated the short-swing profits

provision of Section 16(b) by engaging in a purchase and sale of SCUSA's common stock within

a six-month period. (*See* Compl., ECF No. 1.) Plaintiff, for the benefit of SCUSA, seeks

disgorgement of any short-swing profit realized and retained by Defendant. (*Id.* at 21.) Defendant

moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6). (*See* Notice of Mot., ECF No. 18.) Defendant's motion to dismiss is

GRANTED.

## I.    FACTUAL BACKGROUND

Plaintiff alleges that SCUSA entered into a shareholders agreement (the "Shareholders

Agreement") dated January 28, 2014 with Defendant, along with several other parties,[1] including

---

[1] Namely, such parties were the Dundon HoldCo, Banco Santander, Santander HoldCo, and an investor.

holding companies under their respective control, in preparation for an initial public offering of common stock in SCUSA. (Compl. ¶¶ 20–22.) According to Plaintiff, as part of the Shareholders Agreement, SCUSA, through its holding company, was entitled to purchase Defendant's shares in SCUSA in the event of termination from his position as Chairman and Chief Executive Officer of SCUSA. (*Id.* ¶ 23.) Around the same time, Defendant and SCUSA agreed to a management equity plan, which awarded Defendant, among other stock options, the option to purchase 759,773 shares in SCUSA at $24.00 per share. (*Id.*, Ex. B-1 (Separation Agreement), ECF No. 1-5, at A-2.) Plaintiff asserts that as a result of the initial public offering, Defendant owned around 10% of the common stock in SCUSA through his holding company. (*Id.* ¶ 18.)

On July 2, 2015, Defendant resigned as Chairman and Chief Executive Officer of SCUSA, though he remained on its board of directors. (*Id.* ¶ 24.) That same day, Defendant, SCUSA, their holding companies, and parent and subsidiary entities of SCUSA agreed to the terms of Defendant's separation agreement (the "Separation Agreement"). (*Id.* ¶ 25.) As part of the Separation Agreement, SCUSA stipulated that it would exercise its option to purchase Defendant's shares, which the parties eventually agreed would be exercised at $26.83 per share— reflecting the highest intraday trading price of the common stock over the ten trading days preceding the exercise—instead of the originally agreed-upon volume-weighted average price over that period, which would have been $26.17 per share. (*Id.* ¶¶ 30–32.) The Separation Agreement also entitled Defendant to elect a cash settlement of his options to purchase SCUSA stock, meaning SCUSA would be required to pay Defendant the difference in value between the closing price on the day before exercise and the exercise price. (*Id.* ¶ 28.) On that same day, Defendant delivered to SCUSA an exercise notice, electing cash settlement of his 759,773 share option, as well as for two other share options he possessed, entitling Defendant to a cash payment of the difference between

the closing price on July 1, 2015 and the exercise price, subject to the necessary regulatory approvals. (*Id.* ¶¶ 34, 43.)

By March 2016, SCUSA's stock price had dropped to nearly $9.00 per share. (*Id.* ¶ 41.) Defendant resigned from his role on the board of directors of SCUSA in April 2016, and four months later, Defendant and SCUSA agreed to an amendment to the Separation Agreement, which lowered the price that SCUSA would pay for Defendant's shares from $26.83 per share to $26.17 per share. (*Id.* ¶¶ 45, 48.) That same month, SCUSA assigned its obligation to purchase Defendant's shares to its parent company, Banco Santander. (*Id.* ¶ 50.) The parties then agreed to further amendments to their obligations in a settlement agreement (the "Settlement Agreement"), which was executed on November 15, 2017. (*Id.* ¶ 51.) Under the Settlement Agreement, whereas Banco Santander agreed to pay Defendant $941,945,420 for all 34,598,506 shares in SCUSA that he owned, amounting to $27.225 per share, Defendant agreed to apply a portion of the sale proceeds to repay $294,500,518 due on a loan from Banco Santander. (*Id.* ¶ 55.) Defendant also agreed to lower the cash value of the stock options that he exercised on July 2, 2015 to $19.18 per share, reducing the total amount owed for cash settlement of his options to $52,799,417. (*Id.* ¶ 56; *Id.*, Ex. C (Settlement Agreement), ECF No. 1-8, at 3.)

Banco Santander's purchase of Defendant's 34,598,506 shares in SCUSA and Defendant's exercise of his option to purchase 759,773 shares of SCUSA received the necessary regulatory approvals and were completed on November 15, 2017. (*Id.* ¶¶ 58–60.) That day, SCUSA's stock price closed at $16.28 per share. (*Id.* ¶ 61.) Defendant disclosed these transactions on November 17, 2017, filing a Statement of Changes in Beneficial Ownership on Form 4 with the Securities and Exchange Commission (the "SEC"). (*Id.* ¶¶ 64–67.) Defendant initially coded the exercise

of his option to purchase 759,773 SCUSA shares as an "out-of-the-money" option—that is, the cash value of the stock when exercised did not exceed the exercise price. (*Id.* ¶¶ 68–69.)

On November 30, 2017, "[b]ased in part on the disclosure in the Form 4," Plaintiff sent a letter to SCUSA requesting that SCUSA seek disgorgement of the profits Defendant received as a result of the challenged transactions, pursuant to Section 16(b). (*Id.* ¶¶ 70–73.) Plaintiff informed SCUSA in the letter that if it failed to bring suit within sixty days, Plaintiff would be entitled to seek disgorgement on SCUSA's behalf. (*Id.*, Ex. E (Demand Letter), ECF No. 1-11.) On January 29, 2018, Defendant filed an amended Statement of Changes in Beneficial Ownership on Form 4, reclassifying the exercise of his option to purchase 759,773 SCUSA shares as an "in-the-money" option—namely, that the cash value of the stock at the time of exercise exceeded the exercise price—which would render the transaction exempt from Section 16(b). (*Id.* ¶¶ 74–79.) SCUSA did not respond to Plaintiff's demand within 60 days. (*Id.* ¶¶ 81.) Plaintiff commences this action to recover $2,450,267 in short-swing profits Defendant allegedly realized by his purchase and sale of SCUSA shares. (*Id.* ¶¶ 81, 90.)

## II.   LEGAL STANDARD

### A. Rule 12(b)(6) Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[2]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013).  In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

### III.   DEFENDANT'S MOTION TO DISMISS IS GRANTED

Section 16(b) of the Exchange Act, which imposes liability for "short-swing" profits, forbids an insider's speculative short-term trading in the securities of the corporation based on insider information. *See* 15 U.S.C. § 78p(b); *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125 (2d Cir. 2018).  The Second Circuit has held that its purpose was "to prevent an issuer's directors, officers, and principal stockholders 'from engaging in speculative transactions on the basis of information not available to others.'" *Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 173–74 (2d Cir. 2012) (quoting *Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 218 (2d Cir. 2012)).  Section 16(b) provides, in pertinent part:

> For the purposes of preventing the unfair use of information which may have been obtained by [an insider] by reason of his relationship to the [corporation], any profit realized by him from any purchase and sale, or any sale and purchase, of any equity

---

[2] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' " *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

> security of such [corporation] . . . within any period of less than six months . . . shall
> inure to and be recoverable by the [corporation], irrespective of any intention on
> the part of [the insider].

15 U.S.C. § 78p(b).  Therefore, a claim for disgorgement of profits under Section 16(b) requires

Plaintiff to prove that there was (1) a purchase (2) and a sale of securities (3) by a statutory insider[3]

(4) within a six-month period.  *See Feder v. Frost*, 220 F.3d 29, 32 (2d Cir.2000) (quoting

*Gwozdzinsky*, 156 F.3d at 308).  Section 16(b) is a strict liability statute which applies "irrespective

of any intention on the part of" the insider.  15 U.S.C. § 78p(b); *see also Magma Power Co.

v. Dow Chem. Co*, 136 F.3d 316, 320–21 (2d Cir.1998) ("Section 16(b) operates mechanically,

and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing

corrupt insiders who skirt the letter of the prohibition.").  Accordingly, Section 16(b) was formed

as a "blunt instrument" to impose a form of strict liability by necessitating no showing of actual

misuse of inside information or unlawful intent.  *Donoghue*, 696 F.3d at 174 (citations omitted).

It is undisputed that Defendant, as a beneficial owner of more than ten percent of SCUSA

equity, was a statutory "insider" for purposes of Section 16(b).  (Compl. ¶ 84; Def. Thomas

Dundon's Mem. of Law in Supp. of his Mot. to Dismiss the Compl. ("Mem. in Supp."),

ECF No. 19, at 2.)  Plaintiff argues that because Defendant both purchased 759,773 shares of

SCUSA at $24.00 per share *and* sold 34,598,506 shares of SCUSA at $27.225 per share on the

same date (November 15, 2017), the purchase and sale of securities by Defendant occurred within

a six-month period.  (Compl. ¶¶ 85–86.)  Defendant asserts that, with respect to a fixed-price

option, the relevant date for Section 16(b) purposes is the date upon which the option is acquired

---

[3] Statutory insiders are the "issuer's directors and officers and any persons who own more than ten percent
of any class of the issuer's non-exempt, registered equity securities."  *See Gwozdzinsky v. Zell/Chilmark
Fund, L.P.*, 156 F.3d 305, 308 n.3 (2d Cir.1998) (citing 15 U.S.C. § 78p).

instead of the date upon which it is exercised or the transaction settles.  (Mem. in Supp. at 6.)
Plaintiff's argument is unavailing.

Rule 16b-6 provides that "[t]he establishment of . . . a call equivalent position shall be
deemed a purchase of the underlying security for purposes of [S]ection 16(b)."
17 C.F.R. § 240.16b-6.  Specifically, a call equivalent position "includes an option to purchase at
a fixed price." *Magma Power*, 136 F.3d at 322.  Thus, for purposes of Section 16(b), Defendant's
purchase of 759,773 shares at $24.00 per share is deemed to have taken place on January 28, 2014,
the date he *received the call option*, not on November 15, 2017, the date when the transaction
*settled.  See Chechele v. Sperling*, 758 F.3d 463, 471 (2d Cir. 2014) (affirming the district court's
grant of a motion to dismiss for failure to state a claim under Section 16(b) because, *inter alia*,
"nothing of significance occurred on the [s]ettlement [d]ates"); *see also Donoghue v. Patterson
Companies, Inc.*, 990 F. Supp. 2d 421, 426 (S.D.N.Y. 2013) (holding that the operative date for
Section 16(b) purposes is the date of execution, not settlement).  Moreover, "[t]he SEC . . . treats
the exercise of a fixed-price option as nothing more than a change from an indirect form of
beneficial ownership of the underlying securities to a more direct one." *Magma Power*, 136 F.3d
at 322.  Indeed, everything after the date the option was granted on January 28, 2014—from
Defendant's exercise of the option to the settlement of the transaction—was merely a change in
Defendant's beneficial ownership from one that is indirect to direct.  Because Defendant was
granted an option to purchase SCUSA shares in 2014 and sold shares in 2017, the two operative
transactions did not occur within six months of each other.  Accordingly, Defendant's motion to
dismiss is granted.

## IV. CONCLUSION

Defendants' motion to dismiss, (ECF No. 18), is GRANTED. The Clerk of Court is directed

to close the motion accordingly.

Dated: New York, New York
       August 17, 2020

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

8